Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
Based upon the competent evidence adduced at the hearing, the Full Commission adopts the findings of fact of the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff is a right-handed, 46 year old married female. She is a high school graduate and not only attended the Raleigh School of Data Processing for one year, but other trade schools, including Strader College, which is a business college.
2. Prior to her transfer to Research Triangle Park in 1985 plaintiff had worked at defendant-employer's Greenville facility for ten and a half to eleven years, where she held a number of different jobs, but at the time of her transfer was responsible for bidding hospital rebates.
3. Upon transferring to Research Triangle Park plaintiff became a hospital bid coordinator responsible for bidding hospital contracts, which was a clerical job involving answering the telephone quoting prices to sales representatives and hospitals requiring her to use a computer forty percent of the time.
4. On February 8, 1989 plaintiff sustained the admittedly compensable injury by accident giving rise hereto when she fell on some stairs at the premises of defendant-employer. Plaintiff scratched her hands and knees when she fell, but only initially experienced pain in her knees; however, two days later she began developing a lot of stiffness and other problems, including a lot neck strain and headaches, problems with her arms and knees and lots of muscle spasms.
5. As a result of her fall plaintiff sustained a cervical strain, which developed into a myofascial pain syndrome. In addition, she sustained an injury to her left knee, carpal tunnel syndrome of her left hand and temporarily aggravated her pre-existing depression, which she had earlier experienced in 1986 or 1987 requiring treatment for her stress-related symptoms and is a condition that tends to be acute and then get better, but may or may not recur down the road.
6. After initially being seen at the employer's health center that day and by its so-called company physician, Dr. Cromer, two days later, plaintiff was referred to her personal physician, Dr. Cook, for treatment of the involved injury at her request. Dr. Cook subsequently provided a conservative course of treatment until releasing plaintiff from his care on June 2, 1989 to continue restricted work for the next six to eight weeks that did not involve lifting in excess of twenty pounds or doing exclusive pushing or pulling requiring muscular stress in the neck, shoulder and back, which defendant-employer had been providing since plaintiff initially returned to restricted work on a full time basis on April 1, 1989.
7. As a result of her injuries plaintiff was unable to work a total of 68.5 days between February 8, 1989 and September 6, 1989 when she voluntarily resigned from defendant's employ under the circumstances more fully hereinafter described.
8. Initially plaintiff was out of work during the approximate forty-day period from February 8, 1989 to March 20, 1989 when she returned to work on a half day basis for the twelve-day period between March 20, 1989 and April 1, 1989 when she returned to work on a full time basis at her regular hospital bid coordinator's job, which was within the physical limitations Dr. Cook placed on her. With the exception of the approximate additional 23.5 days in the interim when she was out of work because of her injury, plaintiff was able to continue her regular job on a full time basis between April 1, 1989 and her ultimate resignation from defendant's employ on September 6, 1989.
9. By the time she was seen by Dr. Cook on August 30, 1989 and Dr. Montgomery a day later, plaintiff had recovered from her injuries such that she was capable of working without restriction, including her regular hospital bid coordinator's job. Plaintiff voluntarily retired from defendant's employ five days later and any change attributable to her injury since has been for the better because not only have her physical problems improved with time and the additional medical treatment she received from Doctors Whitney and Burroughs (which even she now acknowledges), but her psychological problems resolved with the psychiatric treatment she received from Dr. Weisler for the acute episode of depression she developed as a result of her injury.
10. Although plaintiff's injury did aggravate her pre-existing depression requiring her to seek psychiatric treatment from Dr. Weisler, the aggravation was only a temporary one resulting in an acute episode of depression requiring psychiatric treatment and resolved with the same treatment. There is no credible evidence that this particular episode of depression continues to incapacitate plaintiff in whole or in part from working.
11. The opinion of the clinical social worker involved, Mark Silver, that plaintiff's injury contributed to the depression for which he treated her at Wake County Mental Health Center and (the same depression) resulted in her being partially incapacitated from work is not accepted as credible and is based on the erroneous assumption that plaintiff had never suffered from depression prior to her injury, which she had, and that she did not voluntarily leave defendant's employ; but rather, was either forced to retire or fired, which she was not.
12. In fact, on September 6, 1989 plaintiff voluntarily resigned from defendant's employ. She was not fired or forced to resign and at the time she voluntarily resigned from defendant's employ plaintiff subsequently contemplated helping her husband in his part time cleaning business. One of the contributing factors to plaintiff's decision to resign was that defendant-employer had refused to grant her a leave of absence that she had requested. The same leave of absence was for personal reasons unrelated to her injury and was at least in part due to job stress because she thought she was mistreated and thought that her co-workers did not like her and did not want to work with her and thought that no one liked her, including her supervisor and upper management. Much the same thing happened when she resigned from a job selling insurance in 1992 because she felt she was being mistreated by her boss there. Since voluntarily resigning from her employment with defendant-employer, plaintiff has also worked two and half to three weeks full time for North Carolina Department of Revenue processing tax returns during the tax season.
13. Because of her continued, but no longer incapacitating, physical problems after she voluntarily resigned from defendant's employ on September 6, 1989, plaintiff sought further medical treatment from Dr. Pamela Whitney, a neurologist, who initially saw her on November 29, 1989 and over the next approximate six-month period not only provided a conservative course of treatment for her carpal tunnel syndrome and neck problems, but referred her to Dr. Burroughs for her resulting knee problems, who over a several month period similarly provided a conservative course of treatment. With the same treatment plaintiff's non-incapacitating symptoms were improved and her testimony otherwise is not accepted as credible.
14. During the same period she was being treated by Doctors Whitney and Burroughs plaintiff sought treatment for her non-incapacitating depression from Dr. Weisler and with his treatment the same condition resolved.
15. There has never been a binding Industrial Commission Award herein giving rise to any presumption of continuing disability nor has plaintiff established by the preponderance of the credible evidence that she has been disabled in whole or in part by her February 8, 1989 injury since voluntarily resigning from defendant's employ.
********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. By September 1, 1989 plaintiff had sufficiently recovered from her February 8, 1989 injury so as to be able to not only continue her regular hospital bid coordinator's job, but to return to unrestricted work had she chosen to rather than voluntarily resigning from defendant's employ five days later for unrelated personal reasons and her condition has not substantially changed for the worse. G.S. 97-29.
2. Plaintiff has not suffered any type of permanent disability as a result of her February 8, 1989 injury.
3. Plaintiff's testimony, and other evidence, which if believed, would tend to establish that she has been either wholly or partially disabled as a result of her February 8, 1989 injury since September 1, 1989 is not accepted as credible.
********
Based upon the foregoing findings of fact and conclusions of law, the full Commission enters the following
AWARD
1. Plaintiff's claim for compensation and/or medical compensation benefits must be and is hereby DENIED.
2. Each side shall pay its own cost.
 S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ___________________ COY M. VANCE COMMISSIONER
S/ __________________ LAURA K. MAVRETIC COMMISSIONER
BSB:md